UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KATHERINE DIANE DAY,

    Plaintiff,

v.                                    Case No:   3:16-cv-1572-J-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Katherine Diane Day, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

On March 16, 2010, Plaintiff filed an application for SSI alleging a disability onset date of March 15, 2010. (Tr. 148-54). Plaintiff's applications was denied initially on September 15, 2010, and upon reconsideration on April 14, 2011. (Tr. 76-78, 83-84). Plaintiff requested an administrative hearing and, on April 6, 2012, a hearing was held before Administrative Law Judge ("ALJ") Gregory J. Froehlich. (Tr. 43-64). On May 3, 2012, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 129-49). Plaintiff filed an appeal before this Court and her case was remanded for additional proceedings on August 26, 2015. (Tr. 543-57). On remand, the same ALJ issued a second unfavorable decision on May 23, 2016, again finding Plaintiff was not disabled. (Tr. 434-60). Plaintiff requested review of the ALJ's decision and, on October 28, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 428-30). Plaintiff commenced the instant action by Complaint (Doc. 1) on December 22, 2016.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2010, the application date. (Tr. 439). At step two, the ALJ found that Plaintiff had the following severe impairments: type II diabetes mellitus with peripheral neuropathy, degenerative joint disease, a bipolar disorder, anxiety, chronic obstructive

lung disease, obstructive sleep apnea, headaches, osteoarthritis and obesity. (Tr. 439). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 440).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except she requires a sit/stand option every thirty minutes. She can occasionally climb ramps and/or stairs but no ladders, ropes or scaffolds. She can occasionally balance and stoop but must avoid kneeling, crouching or crawling. She is limited to frequent fingering and handling on the left side. She must avoid concentrated exposure to extremes of heat, old and respiratory irritants such as fumes, odors, dusts, gases. She must avoid concentrated exposure to work around vibrations, hazards such as moving mechanical parts or unprotected heights. The claimant is limited to simple tasks involving little variation that take a short period of time (defined as up to and including 30 days) to learn. She can relate adequately to supervisors and co-workers but is limited to occasional interaction with the general public. She/he is able to deal with changes in a routine work setting.

(Tr. 442). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 450).

At step five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 451). Specifically, the ALJ found that Plaintiff was capable of performing such jobs as small products assembler and electronic worker. (Tr. 451). The ALJ concluded that Plaintiff was not under a disability since March 16, 2010, the date the application was filed. (Tr. 452).

**II.    Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to properly evaluate the opinion of examining psychologist John T. Blaze, Ph.D.; and (2) whether the ALJ

erred by improperly discounting three detailed physical examinations of Plaintiff. The Court will address each issue in turn.

The Court begins with Plaintiff's first argument. Plaintiff contends that the ALJ's analysis of Dr. Blaze's opinion was inadequate and the ALJ's RFC assessment improperly fails to include limitations identified by Dr. Blaze. (Doc. 19 p. 10). Plaintiff contends that while the ALJ focused on Dr. Blaze's analysis of whether Plaintiff's condition met the requirements of Listing 12.05C, the ALJ missed the import of Dr. Blaze's opinion as it related to Plaintiff's present functioning. (Doc. 19 p. 10). In addition, Plaintiff argues that the ALJ did not discuss Dr. Blaze's diagnosis that Plaintiff had borderline personality disorder. (Doc. 19 p. 14-18). In response, Defendant argues that substantial evidence supports the ALJ's consideration of Dr. Blaze's opinion. (Doc. 21 p. 7-13).

The record shows that Dr. Blaze conducted a psychological evaluation of Plaintiff on January 18, 2016, upon the Commissioner's request. (Tr. 756, 1173-1180). Dr. Blaze noted that Plaintiff reported receiving a GED and being in special education in school. (Tr. 1174). She repeated second and fifth grade. Plaintiff had trouble giving specific information and dates during the examination; however, she was cooperative and gave good effort. Dr. Blaze opined her condition appeared to meet the criteria for major depressive disorder with psychotic features and borderline personality disorder. Her current level of mental health symptoms were severe. On examination, Plaintiff ambulated with a cane. She could attend to the questions but only had fair mental flexibility as she was unable to spell "world" backwards or complete simple tasks of serial calculations without errors. (Tr. 1175). She displayed difficulties in processing speed with extended amounts of time required to complete tasks. She demonstrated fair mental computation as she was unable to complete verbal arithmetic without errors. She had only fair judgment related

to self-care and social problem solving as evidenced by a limited understanding of personal safety, solution-focused ideas, and social interactions. Overall intelligence was in the range of borderline intellectual functioning. Thought form and content appeared to be somatically focused.

Testing was performed that revealed a weakness in processing speed as compared to verbal comprehension. (Tr. 1176). The full scale IQ was only 62 and processing speed was 59. As far as memory, her scores ranged from low average to extremely low. As far as auditory memory (ability to listen to oral information), she scored in the extremely low range of functioning. She fell in the borderline range of functioning for memory of visual details and spatial location. Plaintiff's visual working memory and immediate memory index also were in the borderline range of functioning. Delayed memory index was low average. Dr. Blaze concluded that Plaintiff's memory test results appeared to be consistent with estimated cognitive abilities and also concluded that her symptoms based on her report and clinical observations appeared to be moderately to severely impacting activities of daily living, vocational performance and interpersonal interactions. He recommended that she not manage her own money. (Tr. 1177).

The ALJ asked Dr. Blaze to fill out a medical source statement. Dr. Blaze indicated that Plaintiff had marked limitations in understanding and remembering even simple instructions, and making judgments on simple work-related instructions and had extreme limitations as far as complex instructions/decisions. He reasoned that Plaintiff experienced an extremely low full scale IQ and that her overall below average memory and psychiatric symptoms would make following directions difficult for her on a consistent basis. (Tr. 1178). She also had marked limitations as far as her ability to interact appropriately with supervisors, co-workers and to respond to usual work situations and to changes in a routine work setting. (Tr. 1179). This was due to her depression and borderline personality disorder which would greatly impair her ability to relate to others and

interact socially in an appropriate manner. The borderline intellectual functioning also contributed to the marked decrease in overall social skills. Dr. Blaze also opined that Plaintiff's psychiatric symptoms had been present from late teenage years to the present. She had repeated two grades of school as well as being in special education classes. Dr. Blaze concluded that she likely experienced her low full scale IQ since birth. (Tr. 1179).

In his decision, the ALJ addressed the evidence from Dr. Blaze as follows:

> A psychological evaluation performed by Dr. John Blaze on January 18, 2016 noted diagnostic impressions of borderline intellectual functioning, major depressive disorder, recurrent episode, with psychotic features and a borderline personality disorder. The claimant reported experiencing a history of severe episodes of suicidal ideation, depressed mood, hopelessness, fatigue, sleeping problems, eating problems, guilt, psychomotor agitation, anhedonia, lack of motivation, hallucinations, and crying. It was noted that these episodes had occurred over a course of years and have persisted to the present time. The hallucinations only appeared to occur while depressed. Intelligence testing using the Wechsler Adult Intelligence Scale revealed a Full-Scale IQ of 62, placing the claimant within the extremely low range of intellectual functioning, Verbal Comprehension and Perceptual Reasoning were 70 and 71, falling within the Borderline range (Exhibit 20F/page 5). Administration of the Wechsler Memory Scale—fourth edition revealed Auditory Memory Index (AMI) in the Extremely Low range of functioning. The Visual and Working Memory Index (VMI/VWMI) and the Immediate Memory Index (IMI) fell in the Borderline range of functioning. The Delayed Memory Index (DMI) fell in the Low Average range of functioning. Dr. Blaze opined the claimant's overall memory test results appeared consistent with her estimated cognitive abilities based on the comparison of these test results and obtained intelligence test results.
>
> I give little weight to Dr. Blaze's opinion regarding his diagnosis of borderline intellectual functioning (BIF) for a few reasons. First, the diagnosis of BIF is not based only on IQ scores, but must also take into consideration a person's adaptive functioning. The diagnosis is not made rigidly. In this case, Dr. Blaze is a one-time examining physician. Additionally, although he had the opportunity to perform objective psychological testing, it appears his assessment of the claimant's functioning was primarily based on the claimant's subjective reports. The record suggests a higher level of functioning that is not consistent with a diagnosis of BIF. Additionally, the evidence fails to establish that the claimant's deficits began prior to the age of 22. There is no evidence of a

consistent IQ score across the lifespan of the claimant. There is also evidence of treatment for a closed head injury in the file in 2015 that may play a role in the claimant's decline in intellectual functioning. The claimant previously reported being able to prepare simple meals such as sandwiches. She can make her bed, sweep and shop for groceries a few times a month. She previously indicated her limitations in cooling were primarily limited due to lack of motivation of difficulty standing (Exhibit 8E/page 3). Records from Dr. Rankupalli in January 2009 noted the claimant reported caring for her granddaughter and make no mention of an intellectual impairment (Exhibit 3F). Progress notes in March 2010 document she reported improvement in all of her mental health symptoms, and was caring for her fiancé, who has been in a coma for three months. Progress notes from Stewart Marchman in June 2012 document that the claimant reported having three children and raising a nephew while her sister was incarcerated. She reported receiving her GED in her 30's, noting no evidence of a reading or writing problem (Exhibit 28F/page 52 & 58). At the hearing, she reported daily activities of reading the newspaper and watching the news on television. She successfully passed a driver's exam as she testified she previously had a driver's license, although it was suspended due to lack of insurance. These activities are not consistent with Dr. Blaze's opinion.

Counsel for the claimant responded contending Dr. Blaze's reported dated January 18, 2016 confirms a diagnosis of borderline intellectual functioning and that the claimant meets the criteria for disability since at least September 13, 2010 (Exhibit 37E). However, I do not find counsel's argument persuasive, as the claimant does not have a history of mild mental retardation or borderline intellectual functioning and her adaptive functioning as outlined above fails to support such a diagnosis. The evidence notes a recent fall a few months before where the claimant alleged she hit her head. She reported increasingly severe daily headaches since the fall, which could possibly explain the decline in cognitive functioning. I have included the limitations of simple routine tasks as outline above in consideration of Dr. Blaze's report compared with the claimant's level of function as outline in the record as whole.

(Tr. 449-50).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's

impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the Court finds that the ALJ erred in his analysis of Dr. Blaze's opinion. While the ALJ provided a summarization of Dr. Blaze's psychological evaluation, the ALJ failed to mention or weigh Dr. Blaze's opinion that Plaintiff had marked limitations in understanding and remembering even simple instructions, and making judgments on simple work-related instructions and had extreme limitations as far as complex instructions/decisions. Instead, the only aspect of Dr. Blaze's evaluation the ALJ directly addressed was the diagnosis of borderline intellectual functioning, which the ALJ at length rejected. In his medical source statement, Dr. Blaze explained that his limitation findings were not based on Plaintiff's borderline intellectual functioning, but on Plaintiff's depression and borderline personality disorder, two diagnosis that the ALJ did not specifically address or discuss.

Despite ordering an evaluation to be performed by Dr. Blaze, the ALJ failed to acknowledge or weigh the limitation findings. For this reason, the Court finds Plaintiff's argument that the ALJ failed to properly analyze Plaintiff's current functioning well-founded and that remand is necessary. On remand, the ALJ shall evaluate Dr. Blaze's limitation findings and weigh these opinions in accordance with the law. As the ALJ's reconsideration of Dr. Blaze's opinion

may alter his findings RFC finding, the Court defers from addressing Plaintiff's other raised issue at this time.

### III.     Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2018.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties